UNITED STATES of America, Appellee,

v.

Kenneth G. HANSEN, Appellant,

UNITED STATES of America, Appellee,

v.

Christopher TERLECKY, Appellant.

Nos. 84–1500, 84–1501.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 9, 1984.

Decided Feb. 22, 1985.

Frederick F. Cohn, Chicago, Ill., for appellant.

Gary Annear, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge and JOHN R. GIBSON, Circuit Judge.

HEANEY, Circuit Judge.

Kenneth G. Hansen and Christopher Terlecky were convicted of violating 18 U.S.C. § 844(i), which makes it illegal to destroy by fire a building used in interstate commerce, and of violating section 1952(a)(2), which proscribes interstate travel to commit a crime of violence. In addition, Hansen was convicted of violating 18 U.S.C. § 1952(a)(3), which proscribes interstate use of a telephone with intent to commit

arson.[1] On appeal, both men raise several arguments which we consider in turn, affirming in part and reversing in part.

## I. BACKGROUND

Evidence presented at trial confirmed that Hansen and Terlecky traveled from Chicago, Illinois to Fargo, North Dakota early in May 1984. After assuming false identities ("the Gordon brothers"), the two men arranged to rent an efficiency apartment in the Green Acres Apartment complex in Lidgerwood, North Dakota. On May 5, however, that building was badly damaged by fire which investigators determined had been started by arsonists in the apartment rented by the pair. Damage to the building was exacerbated by a propane explosion in another apartment and by the late arrival of the firefighters, who had been called to an earlier fire of incendiary origin at an outlying farmhouse. Although several residents escaped from the building unharmed, an elderly woman was overcome by the dense smoke and died from smoke inhalation.

Investigators were able to trace Hansen and Terlecky through their connections with a local man who had arranged an automobile purchase for Hansen. Numerous witnesses identified the two as the men who had rented the apartment and who had been at the scene just before the fire. Telephone records and searches in North Dakota and Illinois turned up sufficient evidence to try and convict the pair.

## II. DISCUSSION.

A. *Jurisdiction under 18 U.S.C. § 844(i).*

In pertinent part, 18 U.S.C. § 844(i) (1982) provides for the punishment of anyone who

maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or

in any activity affecting interstate or foreign commerce * * *.

Hansen and Terlecky argue that the district court improperly assumed jurisdiction under this statute because the Green Acres Apartment complex was not real property used in interstate or foreign commerce, as required by the statute.

■ On our reading of the statute and the trial record, we find this argument to be without merit. This Court and others have previously construed broadly the requirement that the property at issue be used in some activity affecting interstate commerce. *United States v. Michaels,* 726 F.2d 1307, 1309 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *United States v. Andrini,* 685 F.2d 1094, 1095 (9th Cir.1982); *United States v. Barton,* 647 F.2d 224, 231 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *United States v. Sweet,* 548 F.2d 198, 100–202 (7th Cir.), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977). All of these Courts have relied on the legislative history of the section which reflects Congress's intent regarding commercial property: "Since the term affecting [interstate or foreign] 'commerce' represents 'the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause,' *NLRB v. Reliance Fuel Corp.,* 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963), this is a very broad provision covering substantially all business property." H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4046.

The Seventh Circuit has twice recently considered similar cases and affirmed the district court's acceptance of jurisdiction. In *United States v. Zabic,* 745 F.2d 464, 470–71 (7th Cir.1984), that Court determined that a forty-three unit apartment building used exclusively for rental and income-producing purposes "falls within the ambit of commercial 'business property'" to which Congress alluded in framing section 844(i). In *United States v. Russell,*

---

1. Hansen was sentenced to life imprisonment, plus two concurrent five-year terms. Terlecky

was sentenced to concurrent twenty and five-year terms.

738 F.2d 825, 827 (7th Cir.1984), the Court also determined that the statute included a two-unit apartment which the owner treated as income property.[2]

We need not go as far as the Seventh Circuit; in the case at bar, not only was the building income-producing rental property [3] but in addition, interstate commerce is implicated in that the building rented to tenants who traveled interstate. Its tenants appear largely to have been transients, working for brief periods in the region's transportation and agricultural industries. The previous two building managers identified several of the tenants as construction workers employed on grain elevators and highways. One group of tenants were beekeepers who came from the southern states. Most of the transient tenants, though, appear to have been from Minnesota and South Dakota; most stayed in the building from a week to a few months. Thus, we conclude from these facts that the building was a business property functioning in interstate commerce. Accordingly, the prosecution was properly instituted in the district court under section 844(i).[4]

### B. *Sentencing.*

Hansen also argues that the district court erred by sentencing him to life imprisonment despite the fact that the jury did not expressly direct the district court to impose such a sentence. We agree.

Ordinarily, imposition of sentence by the district court is not reviewable on appeal. Only if a sentence "exceeds statutory limits, violates constitutional or procedural requirements, or reflects that the district court failed to exercise its discretion or manifestly or grossly abused its discretion" may this Court review the sentence. *United States v. Rosandich,* 729 F.2d 1512 (8th Cir.1984). The discretion of the district court was limited in this case by the statute which provides that life imprisonment may be imposed only if death results from the defendant's actions and if the jury directs the imposition of the sentence. 18 U.S.C. §§ 844(i) and 34. The record does not reflect that the jury made such a recommendation or even that the trial court offered it an opportunity to do so. Absent the recommendation of the jury, this sentence was improper and must be vacated. *See United States v. McFillin,* 487 F.Supp. 1130, 1133 (D.Md.1980).

### III. CONCLUSION.

Appellants raise a series of additional arguments: they base their other claims on a due process violation stemming from an improper jury instruction, insufficiency of the evidence on two charges, violation of the confrontation clause of the fifth amendment, a prejudicial final argument, improper use of expert testimony, and invalid sentences. We have closely examined the record and find that these arguments are without merit.

Accordingly, the judgments of the district court are affirmed except with respect to appellant Hansen whose sentence is vacated and whose cause is remanded to the district court for resentencing.

**2.** Appellants rely heavily on *United States v. Mennuti,* 639 F.2d 107 (2d Cir.1981), which invalidated a conviction under section 844(i) on jurisdictional grounds. That decision is inapposite to the case at bar in that it involved the destruction by fire of "dwelling houses which were not being used for any commercial purpose at all." *Id.* at 111–12.

**3.** Green Acres was a fourteen-unit apartment building owned by a nonresident for income-producing purposes. A professional manager kept up the property, arranged rentals, and insured the building. Thus, it appears to be "business" property as discussed by Congress.

**4.** Because we resolve the jurisdictional question as we do, we need not consider the relevance of possible reliance by tenants on electric power which was transported interstate. We note, however, that use of the origin of electricity to determine jurisdiction would seem to stretch the notion of interstate commerce beyond the limits of logic.